UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

VIRGINIA M. DAMON TRUST,

    Plaintiff,

v.                                                                                                         Case No. 2:03-CV-0135

NORTH COUNTRY FINANCIAL CORPORATION,           HON. GORDON J. QUIST

    Nominal Defendant,

    - and -

DENNIS BITTNER, BERNARD A. BOUSCHOR,
RONALD G. FORD, SHERRY L. LITTLEJOHN,
STANLEY J. GEROU II, JOHN D. LINDROTH,
STEPHEN MADIGAN, SPENCER SHUNK,
MICHAEL HENRICKSON, GLEN TOLKSDORF,
and WESLEY HOFFMAN,

    Defendants.
_____/

## OPINION

Plaintiff, Virginia M. Damon Trust, brought this shareholder derivative lawsuit against North Country Financial Corporation (the "Corporation"), all of its outside directors, and two former officers, alleging breach of fiduciary duty (Count II).[1] Plaintiff also demands restitution and rescission of compensation paid to Ronald G. Ford ("Ford") and Sherry L. Littlejohn ("Littlejohn"), two of the former officers of the Corporation (Count III).[2] Earl D. Holton ("Holton"), a disinterested person appointed by this court, submitted a report (the "Report") to the Corporation after five months of investigation. Holton determined that the maintenance of some of the claims was not in the

---

[1] The following were outside directors: Dennis Bittner, Bernard A. Bouschor, Stanley J. Gerou II, John D. Lindroth, Stephen Madigan, Spencer Shunk, Michael Hendrickson, Glen Tolksdorf and Wesley Hoffman. On the other hand, Ronald G. Ford and Sherry L. Littlejohn were inside directors and officers.

[2] This court issued an order on March 22, 2004, dismissing Count I.

Corporation's best interests. The Corporation adopted the Report and, pursuant to M.C.L. § 450.1495, moved to dismiss those claims not recommended by the Report. For the reasons set forth below, the Corporation's motion will be granted.

## I. Facts

The Corporation was incorporated under the law of Michigan in 1974. It is the holding company of North Country Bank and Trust (the "Bank"). The Bank is the primary operating subsidiary of the Corporation.

The Bank's headquarters was located in Manistique, Michigan. Throughout the 1990s, under the leadership of then-CEO Ronald G. Ford, the Bank grew rapidly by acquiring banks and branches of banks throughout Michigan's Upper Peninsula. In 1999, the Bank expanded into Michigan's Lower Peninsula and moved its headquarters to Traverse City. In the same year, the Bank's stock, which had been privately traded, started to trade over the counter and was listed on NASDAQ in 2000.

Problems started to emerge due to the Bank's aggressive growth. For example, the Bank did not examine thoroughly the soundness of loan portfolios when extending loans. In addition, the Bank failed to keep adequate loan loss reserves. On July 23, 2001, the FDIC issued a report of examination to the Bank. On October 27, 2001, the FDIC notified the Bank that it was a troubled institution. On January 9, 2002, the Bank entered into a Memorandum of Understanding ("MOU") with the FDIC and the Michigan Office of Financial and Insurance Services ("OFIS"). The MOU detailed measures that the Bank should take to resolve the noted problems. Meanwhile, Ford resigned as CEO on May 1, 2002, and Littlejohn replaced him. By the end of 2002, the Bank had failed to achieve the remedial measures mandated by the MOU. On March 26, 2003, the FDIC and OFIS issued a cease and desist order to the Bank.

Plaintiff filed this suit on July 1, 2003. Plaintiff alleges that the directors and officers breached their fiduciary duties, and, as a result, the Bank suffered damages in the amount of at least $40 million. On May 20, 2004, Magistrate Judge Greeley appointed Holton as a disinterested person on motion by the Corporation.

To help conduct his investigation, Holton retained the assistance of an independent legal counsel, Jon Muth, of Miller, Johnson, Snell & Cummiskey, P.L.C. Holton and Muth went through 25 categories of corporate documents and interviewed all of the defendant directors and officers, among others. After five months of investigation, Holton presented to the Corporation a 38-page report that details his findings and conclusions regarding the desirability of maintaining the derivative suit. The Report consists of a summary and detailed presentation of factual findings, supplemented by a list of the corporate records that Holton reviewed. Holton recommended that the Corporation discontinue the suit against all of the outside directors (Count II), except the claim against Wesley Hoffman with respect to his involvement in Ford's employment contract. Holton also recommended that the Corporation discontinue Count III. Specifically, Holton concluded that the Corporation had a basis to assert a claim against Hoffman for a breach of the duty of loyalty and that Hoffman could be guilty of intentional misconduct in his preparation of Ford's December 21, 2001, employment contract. Holton also concluded that the Corporation had a basis to assert a claim against Ford as a director and officer for a breach of the duty of loyalty and the duty of care. Furthermore, Holton concluded that the Corporation might have a basis to assert a claim against Littlejohn for a breach of the duty of care.

The Corporation relies on Holton's recommendations as the basis for its motion to dismiss. The Corporation contends that, pursuant to M.C.L. § 450.1495, the court must dismiss the derivative suit if the court finds that Holton acted in good faith and conducted a reasonable investigation. The

3

Corporation argues that the word "shall" in M.C.L. § 450.1495 requires dismissal once the two underlying conditions (i.e. good faith and reasonable investigation) are met. On the other hand, Plaintiff argues that it should be allowed to pursue all of the claims.[3] Plaintiff does not dispute that Holton acted in good faith and does not suggest how the investigation was unreasonable. However, Plaintiff contends that Holton's conclusions are contrary to Michigan law and the facts. Plaintiff argues that sufficient evidence demonstrates that the outside directors abandoned their duty and that their lack of knowledge of the Bank's problems cannot be a defense. In addition, Plaintiff argues that the directors intentionally inflicted harm on the Bank.

## II. Discussion

In *Burks v. Lasker*, 441 U.S. 471, 99 S. Ct. 1831 (1979), the Supreme Court held "that federal courts should apply state law governing the authority of independent directors to discontinue derivative suits . . . Moreover, we hold that Congress did not require that States, or federal courts, absolutely forbid director termination of all nonfrivolous actions." *Id.* at 486, 99 S. Ct. at 1841. "According to *Burks*, a court faced with this question must first inquire as to whether the relevant state law permits disinterested directors to terminate derivative actions." *Genzer v. Cunningham*, 498 F. Supp. 682, 686 (E.D. Mich. 1980). In the instant case, because the Corporation is a Michigan corporation, Michigan corporate law governs.

M.C.L. § 450.1495 provides:

> Sec. 495. (1) The court shall dismiss a derivative proceeding if, on motion by the corporation, the court finds that 1 of the groups specified in subsection (2) has made a determination in good faith after conducting a reasonable investigation upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation. . . . If the determination is made pursuant to subsection (2)(c) or (d), the plaintiff shall have the burden of proving that the

---

[3] However, Plaintiff devotes its entire brief to challenging Holton's conclusion regarding the outside directors. Plaintiff does not challenge Holton's recommendation that the Corporation should not pursue Count III.

4

>   determination was not made in good faith or that the investigation was not reasonable.
>   (2) A determination under subsection (1) may be made by any 1 of the following:
>   . . .
>   (c) By a panel of 1 or more disinterested persons appointed by the court upon motion by the corporation.

M.C.L. § 450.1495.

The statute thus provides that the court *shall* dismiss the suit if the following two conditions are met: 1) Holton acted in good faith, and 2) he conducted a reasonable investigation upon which his conclusions are based. In the instant case, the parties do not dispute that Holton acted in good faith. Therefore, the only issue left is whether the investigation was reasonable. Plaintiff does not argue that the investigation was not reasonable. Rather, Plaintiff twists the issue and argues that Holton's conclusion is unreasonable: "The Report, and, more specifically, the conclusions drawn in the Report with respect to the Outside Directors, are unreasonable because they stem from a misapplication of the law and facts." (Pl.'s Resp. Br. at 5-6.)

However, a "reasonable investigation" is different from a "reasonable conclusion." Nowhere in M.C.L. § 450.1495 is the court permitted to evaluate the reasonableness of Holton's conclusion. The word "shall" in M.C.L. § 450.1495 denotes mandatory action. "[T]he presumption is that 'shall' is mandatory." *Browder v. Int'l Fid. Ins. Co.*, 413 Mich. 603, 612, 321 N.W.2d 668, 673 (1982). Once the court concludes that Holton acted in good faith, conducted a reasonable investigation, and based his conclusion upon the reasonable investigation, the court is required to dismiss the suit and cannot challenge the merits of Holton's conclusion. Plaintiff's "reasonable conclusion" argument improperly turns the straightforward inquiry under M.C.L. § 450.1495 into a substantive debate on the merits of Holton's conclusion.

Furthermore, the court concludes that Holton has conducted a reasonable and thorough investigation. As stated, Plaintiff has not suggested otherwise. Holton hired Muth, an experienced litigator from a prestigious Michigan law firm, and a former president of the State Bar of Michigan. Holton and Muth spent five months on the investigation. Holton reviewed and analyzed 25 categories of corporate documents dating from December 1974, the inception of the Corporation, to June 2004, a year after this suit was filed. Moreover, Holton reviewed a forensic audit performed by Michelle McHale, a CPA from Plante & Moran, a prestigious accounting firm. Holton and Muth interviewed all of the individual defendants and the management personnel hired after the suit was filed. The Report contains a detailed factual description of various situations that raised potential questions of breach of fiduciary duty, and each description was accompanied by an in-depth analysis of the issues. Furthermore, Holton did not draw a blanket conclusion to dismiss all the claims. Rather, he singled out the claims that the Corporation may have a good-faith basis to assert and recommended that the Corporation pursue these claims. For each claim, Holton assessed the potential recovery based on different liability insurance policies. Moreover, Holton even identified possible causes of action against Hoffman, Ford, and Littlejohn that were not specifically alleged in the complaint. For instance, Holton questioned Ford's sale of his house to the Corporation and concluded Ford acted in bad faith by inflating the price of the house. Holton also questioned Hoffman's bills for the legal services he provided to the Bank because the amount of the bills was close to the amount of the loan that the Bank extended to Hoffman. After investigation, Holton concluded that the bills were incurred in the ordinary course of business and that Hoffman did not breach the duty of loyalty.

Plaintiff's argument eviscerates M.C.L. § 450.1495. The purpose of the section is to give a corporate board an honest, informed, and objective opinion on whether maintaining particular

6

litigation is in the best interests of the corporation.  Derivative claims are, after all, claims on behalf of the corporation, not an investor.  The Michigan statute allows the court to put this determination in the hands of one or more disinterested persons appointed by the court.  And, in this case, not even the Plaintiff disputes Holton's good faith or the reasonableness of his investigation.  Furthermore, the conclusions in the report are based upon the investigation.  This statutory scheme is designed to save the corporation money in defending or prosecuting a weak case originally brought as a derivative claim and to give the corporation the incentive to take the case if the derivative claims have merit.  Here, Holton concluded that some claims have merit and that some do not.  If the disinterested person's conclusions, made in good faith after a reasonable investigation, could be second guessed by a fact finder, there would be no reason to appoint the disinterested person in the first place.

This court also notes that Plaintiff, in its brief, distorts Holton's report and, in this court's judgment, has mis-cited some law.  It is not necessary, however, to deal with these matters because this court finds that Holton made his determinations in good faith after conducting a reasonable investigation upon which his conclusions are based.  Maintenance of some aspects of the derivative proceeding is not in the best interests of the Corporation.

### III. Conclusion

Therefore, this court is required by Michigan law to grant Defendant's motion to dismiss.

A separate Order will be issued.


Dated:  September 7, 2005                                       /s/ Gordon J. Quist
                                                           GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE

7